Good morning. My name is Scott Kelkin. I represent Mr. Prichard. I'd like to reserve five minutes for rebuttal. I'll try to help you, but keep your eye on the clock. It's your responsibility, okay? Thank you, Your Honor. I think there's four things that need to be kept in mind when you take a look at this case. The first is that not one person involved in this case ever questioned Mr. Prichard's credibility regarding his complaints of migraine, headaches, pain, fatigue, cognitive problems, and that he claimed rendered him unable to work. Not one doctor in this case that was hired by MetLife or the Social Security Administration ever questioned the diagnosis of fibromyalgia. That was made by Mr. Prichard's treating physicians, and I'll talk a little bit more about that in detail, because I think the lower court committed clear error there when it made a finding to the contrary. It is undisputed, especially in light of the Jordan case and the Dupree case that the Court cites, and it's at the lower court cites in its opinion, that the current state of medical science has no objective test. You might be running down a trail you don't need to, from my point of view. We've read the briefs. My main concern is whether the district court was correct in using an abuse of discretion test rather than de novo test. Absolutely. I think that's the central issue. If that is the central issue, then these other arguments don't make any difference to — may not make any difference if we happen to agree that the district court used the wrong test, if you could convince us that it makes a difference, that is, either way. And that's where your other argument — but maybe you could start with what law do you rely upon that the district court, in using an abuse of discretion test rather than a de novo test, committed error, and we have to send it back? Yes, Your Honor. Well, I think we have to start that discussion with the Amara case, which says that while a summary plan description may contain information about the plan, it is not the plan. For purposes of what document would you refer us in the documents that were presented to the district court that make clear what the actual plan documents are as opposed to a summary? Well, I think you don't have to look any further than Admin 1, which says your benefit plan is the first words on the document. And that is a document that was prepared, I gather, by MetLife, is that correct? Or does it say that? Yes, I suspect so, because the second page of it is a certificate of insurance. So that's the page that says what documents are included within the plan, is that correct? Yes, it's the certificate, the group policy, et cetera. What is there besides the insurance certificate that we need to look to? Is there any other formal plan document in the record other than the insurance certificate? No, sir. Not by the way I see this case, there's not. There are some other insurance policy things, but they're not particularly relevant here. So it's really — On AR-43, the certificate lists what is part of the contract. And it lists a group policy that the certificate is one of the amendments of or one of the exhibits to. So in your theory, what is the group policy? Well, that's a good question. It's not — it's not in the record. I asked for it during the course of my — the administrative appeal below. It was never produced. But this — So — so I'm wondering about this. So are you alleging a discovery abuse here? I mean, it's essentially your claim that there is a document that they didn't produce that they should have produced? Well, no. I mean, for our purposes, I don't think it matters, because the burden of proof is on them to produce — to prove that this is something other than a de novo review. Except that they did produce the summary plan document, which has all the components that a plan document would have to have. And the certificate that you're saying is the plan document does not have all the components that a plan document would have to have. It doesn't explain things like the procedures for funding and amending the insurance policy, things that are required by the statute to be included in a plan document. So the district court found that the summary plan document was the plan. We have to decide if that was correct. And you haven't really given us anything that meets the requirements for a plan, so I was wondering whether you thought they actually had a document that — that they didn't give you. Well, all I can say is I — it was never produced. It's not in the record here. By the way, do you — do you agree with what Judge Friedland said, that is, that if you include all the documents that were allegedly part of the plan, but you exclude the, in quotes, summary plan — Yes. — are all of the elements that are required for this insurance agreement to be enforced and be carried out within the walls of those documents, or is something missing? No, I think they are. And I mean, in fact, if you take a look at Admin 2, which is the certificate page, I mean, it says the certificate only describes disability insurance, which is what we are dealing with here. But the statute requires procedures for funding the plan and for amending the insurance policy. Those are some of the things that are required by 29 U.S.C. 1102B. Where is that in the certificate that you've produced? I don't see it. But by the same token — But so that means the certificate itself doesn't have everything that a plan needs to have, right? Just because they don't draft their plan right, my client shouldn't have to suffer as a result of that. Well, let's look — how do we deal with this? So as Judge Friedland points out, the statute, I guess ERISA in this case, requires that certain things be included in the plan. If those things are not included in the documents other than the summary of the plan, but Amaro suggests that a summary of the plan tells you about the policy, it isn't the policy, and only in the summary disposition is the abuse of discretion standard set forth, how are we to treat this? It basically is a burden of proof. In other words, they — their plan, they wrote it. If they screwed up, that's their problem. Is that right? Yeah. And I mean, let's back up the chart just a second. I mean, there's no question there's a plan here. Benefits were paid under it. So the default position here is that review is de novo. If there's a — They cost their fees. If there's a deficiency in the plan under ERISA, that's their problem. Yes, sir. Okay. And there is a deficiency here. And I think the other thing — I'm sorry, Judge. Well, I was just going to say there's no deficiency if the summary document is the plan document. And I don't read Amaro as cutting that off. I understand Amaro is saying if there's a conflict between the summary document and the plan document, you can't follow the summary document. But I don't see what Amaro says if we only have one document that seems to comply with what a plan needs to be, and it's the summary plan document. And other circuits have said that the plan — the summary document can be the plan. Of course it can be if they cross their Ts and dot their Is and they use the right language to say that this is a part of the plan or it's incorporated in the plan or they amend the plan. So what did it need to say that it didn't say? What would the summary have needed to say? The only evidence in this case that the — because the summary plan description is silent on that issue. The only evidence in this case is the Zajkiewicz declaration where, you know, at the 11th hour, he says, oh, that's the plan. And — So on that, what about his statement that there is no other plan document here? This plan has no other plan documents other than the summary plan. What about that is inadmissible? That statement itself? I understand that a lot of other things in his declaration are hearsay, but that one statement that there are no other plan documents, can you explain to me why it's inadmissible? But this guy never even says he read the documents. Well, he says he — he says he is the manager of these plans for IBM. No, he does not. And that's the crucial issue here. What he says, excuse me just one second, is that he is a manager of managers who manage administrative vendors for various IBM health and welfare plans. That's what he says. And that's a lot different. But the district court found that that was sufficient foundation for him to make the statement that there are no other documents. And isn't that something we would have to review under a very deferential standard? How can we say that — Yes, it is. And my contention is that that finding is clearly erroneous because that's not what the guy says in his declaration. Well, I mean, the first paragraph says he has the knowledge of the things he's going to testify about, and then he says I'm the manager of all — you know, I oversee all these plans, essentially. Yes, their level is below him, but do we have any reason to think that he — I mean, how do we know that he doesn't actually know the details of the plans? He's the manager. I think you're asking the wrong question. The question is how do — how do we — how does he know what he claims to know? And the declaration is silent about that. But the district court found that he did, so we have to say it's clearly erroneous. And is there something that tells us it's clearly erroneous? Yeah, the declaration itself, because the whole basis of Judge Armstrong Brown finding that this guy knew what he was talking about was that he oversaw the administration of various IBM welfare and benefit plans. That's not what the declaration says at all, not even close. Why don't — if you want to save some time — Yeah, please. Why don't you keep in mind what Judge Freeland has said? We'll have plenty of opportunity to further question you. But let's hear from MetLife, and then we will see if we can put this jigsaw puzzle together here. Well, Your Honor, I think this jigsaw puzzle pretty much solves itself. It's got about three components, and they all fit together very clearly, in my view. I'm sure your view is just that. But let me address any questions that the Court has first, and then — I have a question, and that is with Admin 1. When you look at what supposedly is part of it, it refers to three different, if you will, documents. And nowhere is the summary referred to, at least as I understand it. What am I missing? Well, I think there's been a great deal of confusion caused by the arguments that have been made here, but it's actually pretty simple. What you're looking at is the — I'm a basic sort of guy. I need help. All right. Basically, this is the funding contract. This is the agreement under which MetLife agrees with IBM that it will pick up the tab for the benefits that IBM agreed to pay in the actual plan document. And so — How does that fit with AMARA? You know, the Court there made it clear that there are plans and there are documents that describe the plans. Correct. As I read this, this is the insurance company saying, okay, we've got an insurance contract here, and we want you to know that there are certain documents that are included within it. I read that as what AMARA refers to, I think, as the plan. That is the plan. I don't see where that incorporates by reference or in any other way, except for the declaration that we've just been talking about, which is not part of the plan. The summary plan, if you will. Where in the documents that are referred to in Admin 1 is any reference to the summary plan as being part of the plan? Well, the problem, Your Honor — I mean, there isn't, but there's a good reason for that, and that is that's not the plan document. That's the insurance policy that funds the benefits that are provided by the plan document. So you're saying that the insurance policy is not the plan document? No, it's not. That's remarkable. I've heard probably 20 of these cases since I've been on the bench, and I've never heard anybody have it done that way. It was just quite the opposite. So you're saying now that the summary, which is for the benefit of the holder, supposedly — and this is unusual because it's so long — but supposedly for the benefit so that the ordinary person without a legal background can understand it, is the plan, and the complex, typical insurance company jargon, long-form everything is not the plan. What's that for if it's not — if that's not the plan? What is it, just kind of a little extra weight to the policy? No, that's the agreement between MetLife and IBM as to what MetLife will pay for under the plan that IBM issued. It strikes me that that's a long way from what Justice Breyer was talking about in Amara and agreed to by Justice Scalia in his separate concurrence. The whole theory of it is that — is just the opposite, that they don't want these summaries to become too dominant and, therefore, a different purpose. We had one case. It was an unpublished case. I want you to assume for the sake of argument that I'm going to talk about an unpublished case here and not get spanked by my colleagues, but it was a MetLife case, so I suppose that you're aware of it, and that's the Aldrip case. We didn't publish that case, but it seems very close to the case we have before us. I want you to assume for the sake of argument that we did publish Aldrip. How would you distinguish that case? Aldrip was actually my case, Your Honor, so I'm quite familiar with it. Okay. And you know you lost. I did. I shouldn't have. Obviously, I was not before this panel. But I can assure you that we're going to — if it were, if it were published, we would follow it whether we agreed with it or not. So I want you to assume that's the law of the Ninth Circuit for my question. If it were the law of the circuit, how would you distinguish that case? It's actually a fairly simple matter to distinguish because in that case, what happened procedurally in that case was that the case was fully briefed. There was no discussion at the district court level about what constitutes the planned document because Amara didn't come out until just before that appeal was decided. And so there was no occasion for the district court to make the inquiry or for anyone to brief to the district court what exactly is the formal planned document. Up to that point, I'm sure that Your Honor is well aware that people routinely looked at whatever was out there, if it was a summary plan description, if it was an insurance policy, whatever it might be. And just to be clear, Judge Smith, there certainly are plans where the only document is an insurance policy. But this isn't one of them. This is different. Kennedy. What do you say to the point? I don't want to interrupt you. Yeah. I hope you'll get back to that. My learned colleague's comment, and then I'll follow up. All right. So the crucial distinction really is that in that case, there was nothing in the record that even addressed the issue or potential issue at that point because it wasn't even an issue before Amara as to what constitutes the planned document. In my personal view, I think the panel should have sent it back and had the district court explore that question and resolve the issue of what is the planned document and then decide what that meant. But it didn't do that. That's fine. But, well, you know, we don't always get it right by the view of the lawyers that are participating in the case. But DeSuma did get it right. I don't see how that case is different from this. I mean, there are always differences. But as far as the jurisprudential grasp of the case, I don't see how you would distinguish it if it were a published case. Well, the way I would distinguish it is simply that there was no evidence of what constituted the plan except what was in the record there, and that didn't happen to include anything saying here is what the planned document is. Here, however, what we have is a very large employer that wrote a planned document, so it says, and I don't have any reason to think that it doesn't know what it's benefits, and sometimes we may pay them directly. This is one instance in which they chose to insure benefits, and they did it through the document that is summarized in the certificate that begins the administrative record, which I understand they made available to participants on request probably, which is why it's included here. But the actual planned document for these benefits is the same document that they then in turn gave to participants, made available online as the planned document and also as the summary plan description. But that document says complete details can be found in the official plan documents which remain the final authority and in the event of a conflict with this book shall govern in all cases. So what is that talking about? That is precisely why we asked the planned sponsor through their management employee, what are we talking about here and what's the official plan document? And the response we got, which he actually sets out here, is for some of the welfare benefits that are covered by the SPD, there are separate official plan documents. For this particular form of benefit, long-term disability, there are not. And therefore, in the case of long-term disability, this is the planned document. There is no separate one. But in this particular case, as in all cases, MetLife has the burden of proof, right, to show that the abuse of discretion standard, which is the sum and substance of what we're talking about here, is the controlling standard of review, right? Yes, that's correct. And the only place where that standard is found is in the summary, I'll call it summary. Is that correct? Well, I call it the planned document, but yes. I understand. You call it the PD and I'll call it the summary. Okay. Whatever. Anyway, it's only there. It's only there. So it's your burden, right, to show that that document is the planned document. Correct. If we disagree with you, you lose, right? No, we would win this case on de novo review based on the record that we have. Okay, well, okay. When I say, what I mean is you would lose here, we'd send it back for de novo review by the district court. And that would be the appropriate remedy, right? I believe that probably is correct, yes. You would enjoy that, wouldn't you, working with a district court fine judge? I was quite happy with the district court. If the district court looked at this as abuse discretion test and used the wrong test, is there any question in your mind that we would have to send it back? Or is there something in the district court said whether it's playing, whether it's I do this discretionary review or de novo, I'd come out the same way? There wasn't any statement by that by the district judge. No. The judge did not make such a statement. She didn't make an alternative determination that it wouldn't matter what the standard was. I would come out the same way. She confined herself to the issues that were actually presented in brief by the parties. So if that's true, why wouldn't we have to vacate this and remand it for reconsideration under the proper standard of review? I agree. That was what I just said. I agree that probably would be the result. Is there any argument that we should remand first for an evidentiary hearing on what the plan document is and whether something is missing here, further inquiry into that? Or do you think that ship has sailed? I think that's been established. There certainly hasn't been any suggestion that were this gentleman, for instance, to give a deposition, he would say something different from what he said under oath in his declaration. Were there findings of fact made by the district court on that issue? I'm sorry. On which issue, Your Honor? The one we were just talking about. The knowledge of the plan document? Yes, because she rejected the objections to the declaration. She said she found it to be, you know, properly admissible, and she relied on it. Yes, I understand that. But as a district court judge, I made one. I made findings of fact that were quite clear. Finding one, finding two, finding three, conclusions, conclusion one. Was there any such in this case? She did do separate findings of fact. I don't have a copy right in front of me, so I can't point the Court to the specific numbered paragraph where she addressed that question, but I know that she did. Okay. She did make that finding of fact. Yes. If I understood correctly what you said before, I think it was you, that you ask MetLife what was included within the plan document. No, we asked IBM, the plan sponsor. I mean IBM. Right, the plan sponsor. So it wasn't clear to you what it was, so you asked that this gentleman come and make his declaration. But it's interesting to me that you, an expert lawyer, were not clear what was in the plan document, so you had to ask IBM. If you had to ask that, what about some poor person who's employed? How can they possibly know what the plan document is? Well, that's what the summary plan descriptions function is. But, well, I understand that, but that's to explain to the regular folks what it means. But the reality is, that seems to refer to something else that wasn't clear. And if it's not clear, isn't that MetLife's burden in this case? In other words, to show that the summary is part of the plan. Well, and once again, I mean, I realize we have some disconnect on our terminology, but the summary is the plan. And if you look at the declaration, it explains that this is a document that's put online so that participants can access it. I think it's pretty clear under ERISA that had any participant come to the administrator, the plan administrator, and said, are there other plan documents or whatever, they would have to be provided, and I have no reason to think that they wouldn't be. I mean, that's part of a plan administrator's burden, and the summary plan description slash plan document identifies who the plan administrator is. I've never been on the IBM website for employee benefits, so I don't know what it says, but I would assume that since they're that sophisticated, and they are IBM, that most likely there are electronic links to all sorts of things like that. Undoubtedly. But your feeling was, when you tried this case, that you really needed to have someone from IBM explain that what you call the plan document, I call the summary, is part of the plan. Is that fair? Well, what we needed, I wouldn't say explained so much even, is just confirmation. We just needed to understand for sure that we were correct before we made a representation to the Court. But the documents themselves don't make that clear. No, but it would be unusual if a summary plan description said, and here's the actual plan document, or, I mean, it sounds to me as though Mr. Pritchard's position is, unless this had a bold legend across the front that said, this is the plan document for LTE purposes, that it wouldn't be. But I just don't think that that's true. But it's your burden to show which is the plan document, right? And we have done that. We have done that with admissible, competent evidence that that is, in fact, the case. That evidence being the declaration? That's correct. Without the declaration, you're toast? Is that fair? As far as looking at the documents themselves without the declaration? In other words, you cannot establish That document is the only document in which a grant of discretion appears. That's correct. Okay. So without the declaration, what's the gentleman's name? How do you say it? I don't know. Yakovitch or something? If I were from Chicago, I probably would know, but I don't. I believe it is probably Zikovitch, something like that. Okay. Whatever his name is, without that declaration, there's nothing in the record that shows that what I call the summary is part of the plan. Without that part being in the plan, there is no abuse of discretion standard. We have de novo standard. If the summary plan description document is not also the plan document, then there is not a plan document with a grant of discretion, I agree, because that's the only place it's found. Right. And then we're back to what Judge Wallace indicated earlier, which is that we would need, then, to send this back to the district court for consideration under a de novo review. Is that correct? Possibly. Or, as Judge Friedland, I believe it was, mentioned, possibly to further explore that question. Okay. Any other questions by my colleagues? I see I'm out of time. Thank you very much for your argument. Thank you. We'll hear counsel on his rebuttal, if he wants to. Thank you. Actually, just really one point. I'd just like to draw your attention to the lower court's finest effect, page 12, footnote 4. Let me just read it to you. Plaintiff objects to the ---- Sorry. Could you just give us the E.R. number? I knew you were going to ask me that. Maybe I can figure it out. My copy doesn't have that. Okay. Just a second. I'll figure it out for you. It's in volume 4. I know that. Page 12 of the decision, though? Page 12 of the decision. Okay. It's E.R. 37. Plaintiff objects to Zeikowitz's declaration on the grounds of lack of foundation and hearsay. The foundation objection is overruled as Mr. Zeikowitz clearly states that he oversees the administration of IBM's various welfare and benefit plans, of which the plan is one. That finding is clearly erroneous based on the language contained in this gentleman's declaration. He never says that. What he says is what I discussed before. He's a manager of managers who deal with vendors to some of the plans. We don't even know if this particular plan is one of them. Unless the Court has any other questions, I think I would submit it. I don't believe so. Thank you both for your argument. We appreciate it very much. Thank you. The case just argued is submitted.
judges: Wallace, Smith, Friedland